UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESIGN BASICS, LLC,

               Plaintiff,                               Civil Action No.
                                                  11-CV-10854

vs.

                                              HON. MARK A. GOLDSMITH

CHELSEA LUMBER CO.
and MATTHEW HAGOOD,

               Defendants.
_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 66) and (2)
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DKT. 67)**

## I.     INTRODUCTION

Plaintiff Design Basics, LLC brings claims of copyright infringement under the federal

Copyright Act, 17 U.S.C. § 101 et seq., against Defendants Chelsea Lumber Company ("Chelsea")

and Matthew Hagood.   The matter is presently before the Court on Plaintiff's motion for partial

summary judgment (Dkt. 66) and Defendants' motion for summary judgment (Dkt. 67).   Both

motions have been fully briefed, and the Court heard oral argument on the motions on August 29,

2013.   The parties each seek summary judgment on the affirmative defenses relating to the statute

of limitations, laches, and the license agreement; Plaintiff also seeks summary judgment on

various other affirmative defenses, including waiver and estoppel.   For the reasons set forth

below, the Court concludes that Plaintiff is entitled to summary judgment on the statute of

limitations and laches defenses.   The Court next concludes that the existence of the license

agreement bars some, but not all, of Plaintiff's copyright infringement claims.   Therefore, each

motion is granted in part and denied in part with respect to the license defenses.   Finally, the Court concludes that Plaintiff is entitled to summary judgment on the remaining affirmative defenses Plaintiff addresses, including waiver and estoppel.

## II.   BACKGROUND

Plaintiff Design Basics, LLC is a Nebraska construction company that creates, markets, publishes, and licenses architectural works and technical drawings.   Defendant Chelsea is a lumber yard and building materials store; Defendant Matthew Hagood is a former employee of Chelsea.   The parties have stipulated that Plaintiff is the owner of the copyrights at issue in this case.   Stipulation (Dkt. 66-5).   The parties have further stipulated that the copyrights at issue, which cover various blueprints, house plans, and architectural works, are valid.   Id.

On February 1, 1998, Plaintiff entered into a License Agreement with Defendant Chelsea. License (Dkts. 66-2, 67-2).   The license agreement provides that Plaintiff grants to Chelsea "for the term of this Agreement the limited, non-transferable right and license to do the following, subject to the terms of this Agreement":

> (a) Promote, Market, and sell copies of [Plaintiff's] Blueprints, Products and Plan Books through the public display of the Blueprints, Products and Plan Books, the development and use of marketing, advertising and promotional methods and materials featuring the Blueprints, Products and Plan Books, and the use and reproduction of the plan-related artwork, including the rendered elevation and floor plans, and [Plaintiff's] photography of [Plaintiff's] homes for such marketing, advertising, and promotional purposes.

> (b) Prepare and sell modifications to [Plaintiff's] home plan designs and Blueprints.

License ¶ 1.   It further provides, "To comply with U.S. copyright law, any use of [Plaintiff's] Blueprint, including any construction of the home depicted in the plan, must be specifically authorized by [Plaintiff]."   Id. ¶ 2(e).

2

Under the license terms, Chelsea can order specific plans or blueprints from Plaintiff at an established schedule of prices.  Id. ¶ 6(a); App'x A.  When Chelsea orders a plan or blueprint from Plaintiff, Plaintiff will send to Chelsea "a Promotional License and accompanying camera-ready artwork of the home depicted in the Blueprint, for promotional purposes."  Id. ¶ 6(a).  The license requires Chelsea to "use and display [Plaintiff's] copyright notice in an easily readable size and location on all uses of such designs, photography, Blueprints, Products and Plan Books and in all marketing, promotional or advertising methods or materials . . . which feature or include such designs, photography, Blueprints, Products or Plan Books."  Id. ¶ 3.

The license provides that Chelsea "agrees to sell copies" of Plaintiff's blueprints, products, and plan books at prices established by Chelsea.  Id. ¶ 2(a), (b).  After completing a sale of a blueprint or product, Chelsea shall remit to Plaintiff a re-licensing fee, established as a percentage of the total licensing fee for the particular plan or blueprint.  Id. ¶ 6(c), (d).  The license requires that, within one business day of a sale, Chelsea must report the sale to Plaintiff.  Id. ¶¶ 2(c); 6(b); App'x C.  After Chelsea reports a sale, "[Plaintiff] will subsequently send a Construction License to [Chelsea's] customer which is the legal authorization to build the home depicted in the Blueprint purchased."  Id. ¶ 6(b).  The license further requires Chelsea to maintain records of its sales, and to make such records open for inspection.  Id. ¶ 6(d).

Regarding modifications, the license provides, "[Chelsea] specifically agrees not to re-draw a home plan, based in whole or in part on one or more [Plaintiff's] home plan designs, whether or not such a re-draw incorporates changes to [Plaintiff's] original home plan design, unless the underlying . . . Blueprint has been purchased."  Id. ¶ 3.  The license further requires that "prior to each sale or other transfer of possession of any modification of [Plaintiff's] home plan design or Blueprint, each purchaser or other recipient of such modification must purchase the

3

underlying . . . Blueprint to which such modifications are made . . . ."  Id. ¶ 5(b).  The license

requires Chelsea to keep written records of sales and transfers of modifications, and to "stamp all

drawings, sketches, blueprints and any other documentation or written materials prepared by

[Chelsea] in connection with any modifications . . . with a legend stating 'Design Basics Plan

modified by Chelsea Lumber Company.'"  Id. ¶ 5(d).

> The provision of the license titled "Default" states:
>
> In the event [Chelsea Lumber] breaches any provision of this Agreement or fails to
> perform any of its obligations under this Agreement, or fails to cure any breach of a
> material obligation under this Agreement for a period of thirty (30) calendar days
> after receipt of written notice from [Design Basics] describing such default or
> breach, [Design Basics] shall have the right to take any, all or any combination of
> the following actions:
>> (a) Immediately terminate this Agreement and revoke the License granted
>> to [Chelsea] hereunder; and/or
>> (b) Exercise any other right or remedy which may be available to [Plaintiff]
>> under applicable law.

Id. ¶ 11.   The license further provides that "[t]his Agreement shall be governed and construed in

accordance with the laws of the state of Nebraska, United States of America."   Id. ¶ 15.

In 1998, when the license agreement was originally executed, Chelsea ordered multiple

plans and purchased promotional materials from Plaintiff.   Paul Foresman Dep. at 43, 91 (Dkt.

67-6).   At that time, Chelsea received the promotional materials for "each of the plans that were

subject to the agreement," id. at 91, and began displaying the materials and presentation artwork

on its website and in its in-house library.   John Daniels Aff. ¶¶ 11, 12 (Dkt. 67-7). By March 1999,

Chelsea was displaying promotional materials for approximately 34 of Plaintiff's plans and

blueprints.   Id. ¶ 12.   In 2001, Chelsea ordered an additional nine plans, for which Plaintiff sent

Chelsea promotional materials.   Order 1/29/01 (Dkt. 67-15).

John Daniels, one of Chelsea's owners, testified, "At some point one or more of [Plaintiff's

plans displayed on Chelsea's website] may have inadvertently not contained Design Basics copyright information, but this was never brought to the attention of anyone at Chelsea."   Daniels Aff. ¶ 11.

Paul Foresman, the vice president of Plaintiff and the party responsible for overseeing the account with Chelsea, stated that he was unaware of any inspection performed by Plaintiff of Chelsea's records.   Foresman Dep. at 15, 72.   Foresman testified that he visited Chelsea's premises once and looked at the library where it stored and displayed Plaintiff's products, and at that time he did not have, nor did he raise, any concerns regarding Chelsea's advertising of Plaintiff's products.   Id. at 67-68.   Foresman visited Chelsea's website two or three times prior to 2009 to check that Plaintiff's plans were displayed on the website, and Foresman testified that he did not have any concerns with the material on the website at those times.   Id. at 169.

The number of Plaintiff's products that Chelsea sold dropped from 2001 to 2009; in 2001, Chelsea sold about 56 of Plaintiff's products, and in 2009, Chelsea sold none of Plaintiff's products.   John Daniels Aff. ¶ 10.   Daniels noted that there was a significant change in the housing market and general economy throughout the decade.   Id. ¶¶ 8-9.   Foresman stated that due to the changing economy, Plaintiff's sales of home plans generally dropped off dramatically, but did not disappear altogether.   Foresman Dep. at 88-89.

In 2009, Foresman again visited Chelsea's premises.   Id. at 73.   Foresman noted that, by then, it had been more than a year since Chelsea had reported a sale or ordered a construction license, and Foresman wanted to determine if Chelsea was continuing to promote home construction products.   Id. at 74.   Foresman found that Chelsea was continuing to promote architectural plans.   Id.   Foresman stated that upon discovering that Chelsea was continuing to promote Plaintiff's products – and being aware that there had been no sales of Plaintiff's products

5

reported in over a year – he became concerned that there was possible "illegal distribution or infringement going on of [Plaintiff's] home plans." Id. at 80. He determined that it was "worthy of further investigation." Id.

Plaintiff subsequently retained Gary Lee Ford, a private investigator. Ford Dep. at 11, 15 (Dkts. 66-4, 67-13). Ford was retained to investigate whether Chelsea "was using [Plaintiff's] plans as their own or selling them without fees being forwarded to [Plaintiff]." Id. at 12. Ford went to Chelsea's premises and sought to purchase one of Plaintiff's plans. Id. at 25. Chelsea's representative informed Ford that he could either purchase the plan from the licensed agency, or he could purchase the plan at a reduced cost from Chelsea. Id. at 25-26. Ford ultimately purchased the product from Chelsea. Id. at 49-50. At some point later (Ford could not recall exactly when), the representative called Ford to tell him that the representative had forgotten to give Ford forms to sign for the licensor of the plans, and that he would forward the forms immediately. Id. at 42. By the time Ford submitted his report (four days after the phone call), Ford had not received any forms from Chelsea. Ford Report 11/02/10 (Dkt. 67-14).

After Ford bought the plan, he asked the representative if he could change any of the plan details, and the representative informed him that if the proposed changes "were of any substance, there was an individual named Matt Hagood who would be used to incorporate the changes into the blueprints." Ford Dep. at 51. Ford went to Defendant Hagood, who made some modifications to the plan. Id. at 85.

Plaintiff's amended complaint asserts that Defendants violated Plaintiff's exclusive rights by (i) creating derivative works based on Plaintiff's copyrighted work and (ii) distributing, including by advertising and sale, copies and/or derivatives of the copyrighted work. Am. Compl. Count 1 (Dkt. 39). The amended complaint also contains a count of contributory

6

copyright infringement and a count of vicarious copyright infringement.   Id. Counts 2-3. Finally, the amended complaint asserts that Defendants intentionally removed or omitted Plaintiff's copyright management information from Plaintiff's copyrighted work.   Id. Count 5.

### III.   LEGAL STANDARD

Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   As the Sixth Circuit has explained,

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party.

Biegas v. Quickway Carriers, 573 F.3d 365, 373-374 (6th Cir. 2009) (citations omitted).

### IV.   ANALYSIS

For the reasons that follow, the Court grants Plaintiff's motion and denies Defendants' motion with respect to the affirmative defenses of statute of limitations and laches.   Next, the Court concludes that the license agreement between the parties bars some of Plaintiff's copyright infringement claims – in particular, it bars Plaintiff's claims arising out of breach of covenants contained in the license agreement, because such claims sound in breach of contract and not in copyright.   However, the license agreement does not bar Plaintiff from asserting copyright infringement claims that involve violations of conditions precedent to the license; such claims are outside the scope of the authorizations granted by the license agreement and thus sound in

copyright infringement.   Thus each motion for summary judgment is granted in part and denied in part with respect to the affirmative defense of license.   Finally, the Court grants Plaintiff's motion with respect to the remaining affirmative defenses addressed by Plaintiff.

### A.  Statute of Limitations

As explained below, the Court concludes that Plaintiff is entitled to summary judgment on the statute-of-limitations defense.   Defendants have not shown that Plaintiff had actual knowledge of alleged infringing actions, or was chargeable with such knowledge, more than three years prior to filing suit.   Therefore, Defendants have not demonstrated that Plaintiff's claims began accruing more than three years before the complaint was filed.   Accordingly, Defendants have not shown that the three-year statute of limitations for copyright actions expired before the filing of the instant suit.

### 1.  Parties' arguments

Plaintiff argues that the three-year statute of limitations for copyright infringement actions does not bar its claims, because the claims did not accrue until 2009 at the earliest; Plaintiff contends there is no evidence that it was aware of the existence of the claims prior to 2009.   Pl. Opening Br. at 8-9 (Dkt. 66).   Plaintiff further contends that it has no general duty to police all of its clients.   Pl. Resp. at 11-12 (Dkt. 71).   Plaintiff argues that Defendants have shown no evidence of "storm warnings" or indications of infringing conduct that would have put Plaintiff on inquiry notice of potential violations, and there is no evidence that Plaintiff discovered or reasonably could have discovered the infringement prior to 2009.   Id. at 12, 15.

Defendants maintain that Plaintiff's claims accrued more than three years prior to the filing of the complaint, and therefore the statute of limitations bars the claims.   Defendants contend that Plaintiff did not exercise diligence in discovering any causes of action because Foresman, the

8

employee in charge of the account with Chelsea, only occasionally reviewed Chelsea's website, only visited Chelsea's premises once, and did not review Chelsea's files or inspect its records to ensure compliance.   Def. Opening Br. at 16-17 (Dkt. 67).   Defendants further argue that Plaintiff had a legal duty to exercise due diligence, and that had Plaintiff exercised reasonable due diligence, it could have discovered any alleged causes of action more than three years prior to filing suit.   Def. Reply at 1-4 (Dkt. 74).

   **2.   Discussion**

   The Copyright Act provides, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."   17 U.S.C. § 507(b). The Sixth Circuit has explained that "[a] copyright-infringement claim accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge."   Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC, 477 F.3d 383, 390 (6th Cir. 2007) (quoting Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir. 2004)).

   Defendants do not argue that Plaintiff had actual knowledge of any alleged infringement more than three years prior to suit.   Instead, the parties dispute whether Plaintiff, with due diligence, should have discovered the claimed infringement more than three years prior to filing the complaint.   The parties have pointed to no Sixth Circuit authority in which the court analyzed when a party without actual knowledge of claimed copyright infringement is deemed to be "chargeable" with such knowledge, and the Court is not aware of any.[1]   However, the parties agree that under the "discovery rule" of claim accrual applied by the Sixth Circuit, a cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the

---

[1] Roger Miller and the case on which it relied, Bridgeport Music, were both cases in which the courts determined that the plaintiff had actual knowledge of the injury more than three years prior to filing suit, thereby barring claims arising more than three years prior to suit.

injury forming the basis of the action.   See Design Basics, LLC v. DeShano Companies, No. 10-14419, 2012 WL 4321313, at *10 (E.D. Mich. Sept. 21, 2012) (noting that the Sixth Circuit in Roger Miller applied the discovery rule); see also William A. Graham Co. v. Haughey, 568 F.3d 425, 438 (3d Cir. 2009) (applying the discovery rule).

Courts from other circuits have determined that a reasonably diligent plaintiff should discover the injury forming the basis of an action when the plaintiff is put on inquiry notice of the infringement of a right.   See, e.g., Warren Freedenfeld Assoc., Inc. v. McTigue, 531 F.3d 38, 44 (1st Cir. 2008) ("[A] plaintiff can be charged with inquiry notice, sufficient to start the limitations clock, once he possesses information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer."); Haughey, 568 F.3d at 438 (holding that a claim accrues when the plaintiff "should have known of the basis for its claims, which depends on whether it had sufficient information of possible wrongdoing to place it on inquiry notice" (citations and quotation marks omitted)); Netzer v. Continuity Graphic Assoc., Inc., 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997) ("A cause of action accrues when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." (citation omitted)).

In particular, courts have held that a plaintiff is put on inquiry notice once it possesses information regarding culpable conduct – "storm warnings" – suggesting some reason to investigate.   The First Circuit in Warren Freedenfeld, 531 F.3d at 45, held:

> Typically, inquiry notice must be triggered by some event or series of events that comes to the attention of the aggrieved party.   See McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004).   The familiar aphorism teaches that where there is smoke there is fire; but smoke, or something tantamount to it, is necessary to put a person on inquiry notice that a fire has started.

Similarly, in Haughey, the Third Circuit held that the appropriate test for when a copyright infringement claim accrues is whether the plaintiff "should have known of the basis for its claims,

10

which depends on whether it had sufficient information of possible wrongdoing to place it on inquiry notice or to excite storm warnings of culpable activity."   568 F.3d at 438 (citations and quotation marks omitted).   The Haughey court held that under the inquiry notice test, the defendants "bear the burden of demonstrating such storm warnings, and if they do so, the burden shifts to [the plaintiff] to show that it exercised reasonable due diligence and yet was unable to discover its injuries."   Id. (citations and quotation marks omitted).

Defendants point to no storm warnings or indications of infringement that would "fairly suggest[] some reason to investigate."   Warren Freedenfeld, 531 F.3d at 44.   Furthermore, the Court concludes that there is no evidence in the record that Plaintiff became aware of any indication of wrongdoing prior to 2009.   Although the record evidence indicates that Foresman checked Chelsea's website several times and visited its premises once around 1999-2000, there is no evidence in the record that he saw anything that raised suspicions of infringement.   Indeed, Foresman testified that he saw nothing at that time that indicated infringement.

Defendants argue that Chelsea maintained an online presence and distributed pamphlets promoting Plaintiff's products since the late 1990s and early 2000s, and that Plaintiff could have easily investigated to determine whether any of these materials were potentially infringing. However, the Court concludes that the fact that potentially infringing materials were publicly available does not, without some additional "triggering event," put a plaintiff on inquiry notice. In Warren Freedenfeld, 531 F.3d at 45-46, the court rejected the argument that the plaintiff was on inquiry notice on the day that a building based on the plaintiff's architectural plans was opened to the public, when there was no evidence that the plaintiff toured or viewed the building that was allegedly infringing the plaintiff's copyright.   The court noted, "Architects have no general, free-standing duty to comb through public records or to visit project sites in order to police their

11

copyrights." Id. at 46.   In the instant case, as in Warren Freedenfeld, the fact that evidence of the claimed infringement was publicly accessible does not suffice to put Plaintiff on inquiry notice, without evidence that Plaintiff became aware of storm warnings that would have suggested reason to investigate.   Overall, Defendants have not met their burden of showing evidence indicating that Plaintiff became aware of storm warnings indicating possibly infringing conduct more than three years prior to filing suit.

Although Defendants argue that Plaintiff had a duty to investigate and police its copyrights, the Court concludes that this argument lacks merit.   Defendants do not cite any law supporting their proposition that Plaintiff, simply by virtue of being in a business relationship with Chelsea, was under a continuous duty to investigate Chelsea's behavior.   The Court concludes that Defendants' proposition is contrary to the inquiry notice doctrine, in which a plaintiff's duty to investigate is not triggered until the plaintiff becomes aware of suspicious activity that may indicate infringement.   See, e.g., Warren Freedenfeld, 531 F.3d at 44.   Furthermore, it would be unreasonably burdensome to impose on a copyright owner a "never ending obligation to discover whether anyone to whom he ever supplied his [copyrighted material] would copy it."   MacLean Assoc., Inc. v. WM. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 780 (3d Cir. 1991). Finally, as Plaintiff points out, although the license agreement gave Plaintiff the right to inspect Chelsea's records, there is no language in the license indicating that Plaintiff was under a duty to inspect the records or any other material stored by Chelsea.   Indeed, as Plaintiff points out, the license agreement imposed a reporting requirement on Chelsea, License ¶ 2(c), which undercuts Defendants' argument that the onus was on Plaintiff to police its copyrighted materials.

The Court, therefore, rejects Defendants' argument that Plaintiff was under a continuous duty to police its copyright and concludes that Defendants have not pointed to evidence of any

storm warnings that would reasonably have put Plaintiff on inquiry notice of the claimed infringement more than three years prior to filing suit. For this reason, there is no evidence to support Defendants' argument that the cause of action accrued more than three years before the complaint was filed. The Court grants Plaintiff's motion for summary judgment and denies Defendants' motion for summary judgment with respect to the statute-of-limitations defense.

### B. Laches

The Court concludes that Plaintiff is entitled to summary judgment on the affirmative defense of laches. As the Court explains below, Defendants have not demonstrated that Plaintiff unduly delayed in bringing suit due to a lack of diligence and that such delay was prejudicial to Defendants, as would be required to maintain a laches defense.

#### 1. Parties' arguments

Plaintiff argues that its claims are not barred by the doctrine of laches, because there is no evidence that Plaintiff unduly delayed in bringing suit and no evidence of prejudice to Defendants. Pl. Opening Br. at 9-10 (Dkt. 66). Plaintiff further argues that Defendants have not shown that Plaintiff had actual knowledge of the infringing activities, and that Defendants have demonstrated no facts or information that Plaintiff would have possessed prior to 2009 that would trigger a duty for Plaintiff to investigate. Pl. Resp. at 16-17 (Dkt. 71).

Defendants argue that the doctrine of laches bars Plaintiff's claims because Plaintiff never policed its copyrights and never exercised its right to seek an inspection or audit of Defendants' records. Def. Opening Br. at 20 (Dkt. 67). Defendants contend that had Plaintiff exercised diligence, it could have discovered, early on, any non-compliance by Defendants. Id. at 22. Defendants further argue that they have met the prejudice requirement of the laches doctrine, because were it not for Plaintiff's undue delay in bringing suit, many of the alleged infringing

13

incidents could have been avoided or would not have occurred.   Def. Reply Br. at 5-6 (Dkt. 74).

   **2.  Discussion**

   The parties agree that laches is available as a defense to a claim of copyright infringement. See Broadcast Music, Inc. v. Roger Miller Music, Inc., 396 F.3d 762, 783 n.13 (6th Cir. 2005). The parties also agree that Defendants must demonstrate two elements to succeed on a laches defense: (i) undue delay and lack of diligence on the part of Plaintiff, and (ii) prejudice to Defendants as a result of the delay.   See Herman Miller, Inc. v. Palazetti Imports & Exports, Inc., 270 F.3d 298, 320 (6th Cir. 2001).   The question before the Court is therefore whether Defendants have demonstrated these elements, as would be required to grant summary judgment for Defendant, or have raised a genuine issue of material fact regarding these elements, as would be required to deny Plaintiff's motion for summary judgment.

   As an initial matter, the Court notes that "if the statute of limitation has not elapsed, there is a strong presumption that plaintiff's delay in bringing the suit . . . is reasonable.   Only rarely should laches bar a case before the . . . statute has run."   Chirco v. Crosswinds Communities, Inc., 474 F.3d 227, 233 (6th Cir. 2007) (citations and quotation marks omitted).   Because the Court has concluded that the three-year statute of limitations in the Copyright Act has not elapsed with respect to Plaintiff's claims, Defendants must overcome the "strong presumption" that any delay in bringing the instant suit was reasonable.

   In light of this law, the Court turns to the elements of laches.   Regarding the first element, lack of diligence, it is established that "where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." Johnston v. Standard Min. Co., 148 U.S. 360, 370 (1893).   Therefore, the Court considers whether

14

a duty of inquiry was triggered by facts already known to Plaintiff.

Defendants have not asserted that there were particular facts known to Plaintiff that would have triggered a duty to investigate; instead, Defendants argue, without supporting authorities, that Plaintiff had a standing duty to investigate Chelsea's use of its copyrighted work, and therefore, knowledge of any infringement should be imputed to Plaintiff.  Because Defendants have not pointed to any particular facts known to Plaintiff, the Court concludes that Defendants have not met their burden regarding this element of laches.

With respect to the element of prejudice, the Sixth Circuit has noted that a defendant must produce record evidence demonstrating prejudice to succeed on a laches defense.  See Hoste v. Radio Corp. of Am., 654 F.2d 11, 12 (6th Cir. 1981) ("[T]here was no evidence of prejudice to [the defendants] by reason of the plaintiff's delay in filing this action.  A showing of prejudice is a requirement for application of the doctrine of laches.").  The only record evidence Defendants points to in support of their prejudice argument is the affidavit of John Daniels, ¶ 7, in which Daniels testified, "Having never received notice (written or oral) from Design Basics that Chelsea was potentially violating any copyrights or in breach of the Licensing Agreement, Chelsea continued to conduct business in the same manner since signing the Agreement, believing Chelsea was in compliance."

The Court concludes that this affidavit does not squarely support the argument that Defendants were prejudiced by any delay in bringing suit; instead, the affidavit seems to indicate that Defendants may have been prejudiced by Plaintiff's delay in communicating with Chelsea regarding potential copyright violations.  However, "[t]he delay, which the defense of laches contemplates, is not delay in bringing claims to the attention of the defendant.  It is delay on the part of the plaintiff in instituting litigation on his claims."  Nealey v. Transportacion Maritima

15

Mexicana, S.A., 662 F.2d 1275, 1280 n.6 (9th Cir. 1980) (citations and quotation marks omitted). Daniel's affidavit refers to Plaintiff's delay in, or failure to, notify Chelsea of the alleged violations, but Daniel's affidavit does not refer to Plaintiff's delay in filing suit.   Therefore, the affidavit is not supportive of the prejudice element of laches.

Regardless, the Court notes that it does seem plausible that had Plaintiff initiated this action earlier, at least some of the alleged incidents of infringement would not have occurred.   See Mappa Music Co. v. Universal-Polygram Int'l Pub., Inc., No. 00-6593, 2001 WL 1868083, at *7 (C.D. Cal. Dec. 17, 2001) ("Had Plaintiff asserted its claim sooner, it is plausible that the numerous alleged infringements since the 1960s . . . would not have happened.").   But because Defendants have not presented record evidence squarely supporting this point, and because Defendants have not met the lack of diligence element of laches, the Court concludes that Defendants have not met their burden of demonstrating the elements of laches.

Chirco, 474 F.3d at 233-236, on which Defendants rely, is distinguishable.   In Chirco, a real estate developer brought a copyright infringement suit against an architectural design firm that allegedly constructed buildings based on the developer's design plans.   The court noted that the developer was aware of the design plans and took no steps to restrain the construction until after the construction was substantially completed.   The court therefore held that laches barred the plaintiff's request to destroy the buildings, although the plaintiff's claims for damages and other injunctive relief were not barred.   Id. at 235-236.   However, this case is distinguishable; in Chirco, the court concluded that the undue prejudice to the defendant – demolition of completed buildings – was clearly demonstrated.   Furthermore, the Chirco court allowed the plaintiff's claim for damages and injunctive relief (other than the demolition of the buildings) to proceed. Therefore, Chirco does not change this Court's analysis on the laches issue.

16

For these reasons, Defendants have not overcome the strong presumption in this case that the defense of laches is inapplicable.   The Court grants Plaintiff's motion and denies Defendants' motion with respect to the laches defense.

**C.  License Agreement**

The parties dispute whether the existence of a license agreement between Plaintiff and Chelsea bars Plaintiff from asserting its claims of copyright infringement.   As the Court discusses below, the existence of an express license authorizing a particular use of copyrighted material generally bars a copyright infringement claim regarding that particular use.  If, however, the license agreement contains conditions precedent to the grant of authorization to make a particular use of copyrighted material, and such conditions have not been satisfied, an infringement claim may lie because the authority for use under the license agreement was never triggered.

The Court concludes that the license agreement contains no conditions precedent to the grant of authority to sell Plaintiff's unmodified work.  Similarly, the license term requiring Chelsea to affix a copyright notice to all promotions or displays of Plaintiff's work is a covenant, not a condition precedent.   Therefore, claims that Defendants sold Plaintiff's unmodified work or promoted or displayed Plaintiff's work without a copyright notice in violation of the license terms sound in breach of contract, not copyright infringement.   However, the license term requiring Chelsea to sell the unmodified blueprint of a particular plan to a customer before modifying the plan is a condition precedent to Chelsea's right to sell modified plans of Plaintiff's protected work. Plaintiff's claims that its copyrighted material was modified and sold without the underlying plan first being purchased thus sound in copyright infringement, not in breach of contract.   The Court, therefore, grants Plaintiff's motion for summary judgment on the license defense with respect to claims that Defendants modified blueprints and plans and sold them without first selling the

17

unmodified blueprint of the plan to the customer.

### 1. Parties' arguments

Plaintiff argues that Defendants' affirmative defenses of express license and implied license are barred.   Pl. Opening Br. at 4 (Dkt. 66).   Plaintiff contends that Defendants breached various terms, which Plaintiff claims are conditions precedent to authorized use of its work.   Id. at 6-7.   These terms include: (i) displaying a copyright notice, (ii) payment of amounts due, (iii) reporting a sale and obtaining a specific construction license, and (iv) selling an unmodified plan to the customer prior to modifying a plan.   Id., Pl. Reply at 7-8 (Dkt. 75).   Plaintiff argues that the use of its work without satisfaction of these alleged conditions precedent amount to unauthorized use of the work and make such use actionable as copyright infringement. Pl. Opening Br. at 5-7; Pl. Resp. at 21 (Dkt. 71). Plaintiff also argues that Defendants' defense of a broad implied license fails due to the existence of an express written license agreement.   Pl. Opening Br. at 7.

Defendants argue that they are entitled to summary judgment on the license defenses. Def. Opening Br. at 23-27 (Dkt. 67). Defendants contend that Plaintiff's remedy is limited to a breach of contract suit, because the terms that allegedly were violated were covenants in the license, not conditions.   Id. at 24-26.   Defendants also argue that the defense of an implied non-exclusive license is applicable, and that, at a minimum, this defense would apply to Defendant Hagood, because Hagood had an implied license to modify purchased plans.   Def. Resp. at 17 (Dkt. 72).

### 2. Discussion

#### a. Express License

The parties do not dispute that there exists an express written license agreement between Plaintiff and Chelsea for the use of the copyrighted materials at issue.   However, the parties

18

dispute whether the instant action properly sounds in breach of the license agreement or in copyright infringement.

As a general matter, "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998) (citations omitted). However, uses of the copyrighted material that exceed the scope of the license may infringe the licensor's copyright. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license. The critical question is not the existence but the scope of the license." (citation omitted)). A particular use of copyrighted material is outside the scope of a licensing agreement if that particular use is not authorized by the license agreement. See, e.g., Gilliam v. Am. Broadcasting Co., Inc., 538 F.2d 14, 20 (2d Cir. 1976) ("One who obtains permission to use a copyrighted script in the production of a derivative work, however, may not exceed the specific purpose for which permission was granted."); cf. Quinn v. City of Detroit, 23 F. Supp. 2d 741, 749 (E.D. Mich. 1998) ("If Defendant had a license to make a particular use of a copyrighted work, defendant cannot have committed infringement." (citation omitted)). Here, the burden is on Plaintiff to show that Defendants' use of the copyrighted blueprints and plans were not authorized by the license. See Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995) ("[I]n cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized." (citation omitted)).

Furthermore, if a license authorizes the licensee to make a particular use of copyrighted material only if a certain circumstance, event, or action takes place – i.e. a condition precedent – then the licensee's use of the protected material without the condition precedent having first been

satisfied may give rise to a cause of action for copyright infringement.   As explained in a leading treatise on copyright,

> If the grantee's violation consists of a failure to satisfy a condition to the grant (as distinguished from a breach of a covenant), it follows that the rights dependent on satisfaction of that condition have not been effectively granted, rendering any use by the grantee without authority from the grantor.   The legal consequence is that the grantee's conduct may constitute copyright infringement. . . . More generally, when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement.

M. Nimmer & D. Nimmer, 3 Nimmer on Copyright § 10.15[A][2].   See also BroadVision, Inc. v. Med. Protective Co., No. 08-1478, 2010 WL 5158129, at *3 (S.D.N.Y. Nov. 23, 2010) ("Whether a licensee has acted outside the scope of the license depends on whether the terms of the license were covenants or conditions.").

"A condition has been defined as any fact or event which qualifies a duty to perform." Graham, 144 F.3d at 237 (citations and quotation marks omitted).   In particular, a "condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or contractual duty arises."   R. Lord, 13 Williston on Contracts § 38:7 (4th ed. 2000).   See also D&S Realty, Inc. v. Markel Ins. Co., 789 N.W.2d 1, 14 (Neb. 2010) ("A condition precedent is a condition which must be performed before the parties' agreement becomes a binding contract, or a condition which must be fulfilled before a duty to perform an existing contract arises." (citation and formatting omitted)).   Therefore, for a term in the license agreement to be a condition precedent, the term must establish a requirement that must be met, or a circumstance that must occur, before the authority to use the copyrighted work is granted.   If the license term instead establishes a requirement that does not have to be performed until after use of the copyrighted work occurs, such term is not a condition precedent.   See Graham, 144 F.3d at 237 (concluding that where the copyright owner "turned over the

[copyrighted software] for [the licensee's] use before any royalties were paid," the requirement of royalty payments was a contractual covenant, not a condition precedent).

Finally, just because a particular use is outside the scope of a license does not necessarily mean that a cause of action would sound in copyright infringement.   For there to exist a potential claim of copyright infringement, the alleged use must be outside the scope of the license <u>and</u> it must implicate one of the five exclusive rights of a copyright owner listed in 17 U.S.C. § 106: the right of reproduction; right to prepare derivative works; right of distribution; right of performance; and right of display. <u>See</u> <u>Storage Tech. Corp. v. Customer Hardware Eng'g & Consulting, Inc.</u>, 421 F.3d 1307, 1316 (Fed. Cir. 2005) ("[U]ses that violate a license agreement constitute copyright infringement only when those uses would infringe in the absence of any license agreement at all.").

Before analyzing the competing positions of whether the breached license terms are conditions precedent to the issuance of a license, as argued by Plaintiff, or contractual covenants, as argued by Defendants, the Court must identify the appropriate body of law to be consulted.   In interpreting whether a term is a condition or a covenant, "[t]he license must be construed in accordance with the purposes underlying federal copyright law. . . . We rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy."   <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1087 (9th Cir. 1989) (citations omitted).

Because state law applies to the interpretation of the license agreement, it is necessary to first determine which state's law to apply.   Because the Court has federal-question jurisdiction over this case, the Court applies federal choice-of-law principles.   <u>Med. Mut. of Ohio v. Denise</u> <u>deSoto</u>, 245 F.3d 561, 570 (6th Cir. 2001).   "In the absence of any established body of federal

21

choice of law rules, [the Court] begin[s] with the Restatement (Second) of Conflicts of Law."   Id.

The Restatement (Second) of Conflicts of Law § 187 provides, in pertinent part:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In the instant case, the license agreement contains a choice of law clause providing that Nebraska law shall govern the construction and application of the contract.   License ¶ 15. Plaintiff argues that Nebraska law applies; Defendants rely on both Michigan and Nebraska law. Neither party has argued that Nebraska has no substantial relationship to the parties or to the transaction, or that another state would have a materially greater interest in the instant dispute. Indeed, the Court notes that Plaintiff is a Nebraska company.   Therefore, the Court applies Nebraska law to the issue of whether the license terms are conditions precedent or covenants. In Nebraska, the meaning of a contract and whether a contract is ambiguous are questions of law. Davenport Ltd. Partnership v. 75th & Dodge I, LP, 780 N.W.2d 416, 422 (Neb. 2010).

"Broken contractual promises give rise to actions for breach of contract, whereas unfulfilled conditions mean that an enforceable contract was never formed."   Stackhouse v. Gaver, 801 N.W.2d 260, 270 (Neb. Ct. App. 2011).   "Whether contractual language is deemed conditional or promissory generally depends upon the intention of the parties.   Where the intent of the parties is not clear, the disputed language is generally deemed to be promissory rather than conditional."   Harmon Cable Comm's of Neb. Ltd. P'ship v. Scope Cable Television of Neb. Co.,

468 N.W.2d 350, 359 (Neb. 1991) (citations omitted).   Phrases suggesting that a contractual term is a condition include "'if,' 'provided that,' 'when,' 'after,' 'as soon as,' 'subject to,' 'on condition that,' or some similar phrase." Stackhouse, 801 N.W.2d at 270 (citing Harmon Cable Comm's, 468 N.W.2d at 359).   The Court looks at the "contract as a whole in order to construe it." Ruble v. Reich, 611 N.W.2d 844, 850 (Neb. 2000) (citations omitted).

In light of this law, the Court turns to the terms of the license agreement relating to the specific violations asserted by Plaintiff.   Plaintiff claims that Defendants unlawfully sold and transferred copies of the copyrighted work; promoted and displayed the copyrighted work; displayed the copyrighted work without Plaintiff's copyright notice; and modified the copyrighted work.

The Court first turns to the license provisions regarding the sale of the plans.   The license provides that Plaintiff grants to Chelsea "for the term of this Agreement the limited, non-transferable right and license to do the following, subject to the terms of this Agreement: Promote, Market, and sell copies of [Plaintiff's products]." License ¶ 1.   Chelsea may sell copies of Plaintiff's blueprints and other products at prices established by Chelsea. Id. ¶ 2(a), (b).   After selling a blueprint or product, Chelsea must (1) report the sale to Plaintiff, (2) remit a re-licensing fee to Plaintiff, and (3) maintain records of all of its sales. Id. ¶¶ 2(a), 2(b), 2(c), 6(b), 6(c), 6(d).   Once a sale is reported, Plaintiff will send a construction license to the customer.   Id. ¶ 6(b).

Under the plain language of the license agreement, Chelsea was authorized to sell the copyrighted work in its unmodified form, without any other act or circumstance first taking place.[2] The requirements of reporting sales, remitting fees, and maintaining records are not triggered until

---

[2] As discussed infra, the Court finds that Chelsea's right to sell a modified work is subject to a condition precedent.

after Chelsea makes the sale.  Because these requirements are only performed after Chelsea completes a sale, the requirements of reporting sales, remitting fees and maintaining records are contractual covenants, not conditions.  Therefore, the license provisions relating to selling unmodified plans are contractual covenants, not conditions precedent, and Plaintiff's claims that Defendants sold its copyrighted work in violation of these license terms sound in breach of contract, not in copyright infringement.    Plaintiff argues that, under <u>Stackhouse</u>, 801 N.W.2d at 270-71, the "subject to" language found in paragraph 1 of the agreement[3] compels the conclusion that the terms referenced by Plaintiff must be considered conditions precedent. However, the <u>Stackhouse</u> court said that such language is "evidence" that the term is a condition, <u>id.</u>, not that such language invariably mandates that the term be treated as a condition.

In this case, the "subject to" language applies to "the terms of this agreement."   Adopting Plaintiff's interpretation of the "subject to" language as necessarily denoting a condition precedent would lead to the implausible conclusion that every term in the license agreement is a condition precedent.   This would, nonsensically, encompass terms that are clearly not conditions at all, such as the terms establishing the parties' mailing addresses (¶ 13), providing for severability (¶ 17), and indicating choice of law (¶ 15).

A more plausible reading is that the phrase "subject to" simply indicates that the rights referenced in paragraph 1 are spelled out in greater detail in other terms of the agreement, some of which may constitute conditions and some of which may be covenantal in nature.   This reading of the "subject to" phrase is supported by the fact that the phrase does not specifically reference any particular term. By contrast, a typical condition spells out a particular event, circumstance or act

---

[3] The provision states, "[Plaintiff] grants to [Chelsea] for the term of this Agreement the limited, non-transferable right and license to do the following, subject to the terms of this Agreement . . . ." License ¶ 1.

that forms the condition.

Further, as noted above, Nebraska courts apply a presumption that, "where the intent of the parties is not clear, the disputed language is generally deemed to be promissory rather than conditional." Harmon Cable, 468 N.W.2d at 359. In support of this proposition, the Harmon Cable court cited Mrozik Const. v. Lovering Assoc., 461 N.W.2d 49 (Minn. App. 1990). In Mrozik, the Minnesota court expressly held that a determination that a contract is ambiguous precludes a finding that the ambiguous language is a condition precedent: "In this case, a finding that the contract language is ambiguous is dispositive. If the language is ambiguous, it cannot be unequivocal; and we hold here that a condition precedent will not be found absent unequivocal language." Id. at 52. Here, the plain language of the agreement makes clear that no action had to precede the sale to authorize Chelsea to sell. Therefore, there is no ambiguity. But even if the "subject to" language suffices to create an ambiguity regarding whether the above contract provisions are conditions precedent or covenants, the provisions must be deemed covenants under the Nebraska canon of interpretation pertaining to conditions.

Plaintiff also points to the "specifically authorized" language of Section 2(e) of the agreement as support for its argument that the right to sell was subject to a condition precedent. That provision states:

> To comply with U.S. Copyright law, any use of [Plaintiff's] blueprint, including any construction of the home depicted in the plan, must be specifically authorized by [Plaintiff]. Upon receipt of [Chelsea's] notification of the sale of [Plaintiff's] blueprint, [Plaintiff] will issue a Construction License to the retail customer who purchased [Plaintiff's] blueprint through [Chelsea]. (See also section 6). Any other distribution of [Plaintiff's] Blueprint by [Chelsea] is strictly prohibited.

License ¶ 2(e).

However, the "specifically authorized" language pertains to "use" of the Blueprint and

addresses construction of a home as an illustration of the use. Notably, use is contrasted with sale because the provision recites that a construction license will be issued by Plaintiff <u>after</u> notification of the sale by Chelsea. Thus, the provision appears to address post-sale use of the blueprint, making the "special authorization" for construction a post-sale matter, as well. As such, the "specifically authorized" language and the construction license requirement cannot be deemed conditions precedent to the right to sell an unmodified plan. At most, this language and the last sentence providing that "any other distribution of the DBI Blueprint by CL is strictly prohibited" create an ambiguity, which under Nebraska law, requires characterization of the provision as a covenant, not a condition precedent to the right to sell an unmodified plan.

Finally, Plaintiff does not argue that the Nebraska law regarding construing contract terms as covenants or conditions is inconsistent with federal copyright law or policy. Thus Plaintiff has failed to identify conditions precedent to Chelsea's right to sell unmodified plans, and any claims pertaining to such sales would be actionable only as breaches of contracts, rather than copyright infringement.

The Court next turns to the license provisions regarding promoting and displaying the copyrighted work. As noted above, the license provides that Plaintiff grants to Chelsea "for the term of this Agreement the limited, non-transferable right and license to . . . Promote, Market, and sell copies of [Plaintiff's products]." The Court concludes that there is no action, circumstance, or event that must occur before Chelsea could promote or display the copyrighted work. Therefore, Plaintiff's claims that Defendants unlawfully promoted or displayed its plans sound in breach of contract, not in copyright.

Plaintiff points to the following language as creating a condition precedent to promoting or displaying the work: "[Chelsea] also agrees to use and display [Plaintiff's] copyright notice in an

26

easily readable size and location on all uses of such designs, photography, Blueprints, Products and Plan Books and in all marketing, promotional or advertising methods or materials developed or used by [Chelsea], which feature or include [Plaintiff's copyrighted work]."   License ¶ 3.

The Court disagrees that this provision constitutes a condition precedent.   The license term does not contain a phrase such as "subject to," "unless," "on condition of," or some similar phrase denoting that the particular requirement of including copyright notice was a condition precedent to the grant of authority to display the copyrighted work.   See Stackhouse, 801 N.W.2d at 270.   Courts have emphasized the necessity of clear, unambiguous language indicating that a contract term is a condition before deeming such term a condition precedent as opposed to a covenant.   See Harmon Cable, 468 N.W.2d at 359; cf. Jacobsen v. Katzer, 535 F.3d 1373, 1382 (Fed. Cir. 2008) (concluding that a contract term authorizing users to download, modify, and distribute copyrighted files "provided that" the user include the owner's copyright notice was a condition precedent.).   Although the inclusion of language such as "unless" or "on condition of" would not be dispositive of the issue, the absence of such language weighs against finding clear intent to create a condition precedent.   Because the license term requiring inclusion of a copyright notice is not unambiguously a condition precedent, the Court concludes that the term must be deemed a contractual covenant.[4]   Plaintiff's claims that Defendants promoted or displayed its copyrighted work in violation of these license terms sound in breach of contract, not in copyright infringement.

---

[4] The Court's analysis is supported by Graham, 144 F.3d at 236-237.   In Graham, the court, applying a presumption that contractual terms are covenants as opposed to conditions, concluded that where the parties did not clearly delineate the conditions and covenants of an oral license agreement, a contractual term requiring the inclusion of a notice crediting the copyright owner was a covenant, not a condition.   As in Graham, the license term in the instant case is not clearly delineated as either a covenant or a condition.   The Court must, therefore, deem it a covenant.

Finally, the Court turns to the license provisions relating to modification.  The license provides, "[Chelsea] specifically agrees not to re-draw a home plan, based in whole or in part on one or more [of Plaintiff's] home plan designs, whether or not such a re-draw incorporates changes to the [] original home plan design, unless the underlying [] Blueprint has been purchased." License ¶ 3.  The requirement of selling the underlying blueprint before making any modifications to the blueprint is an unambiguous condition precedent: <u>unless</u> Chelsea sells Plaintiff's underlying blueprint, it was unauthorized to modify the blueprint. The inclusion of the word "unless" weighs toward finding this provision a condition precedent, given that it is identical in meaning to "provided that" – a phrase that the <u>Stackhouse</u> court explained is the language of a condition.  <u>Stackhouse</u>, 801 N.W.2d at 270.   Moreover, one of the five exclusive rights of copyright owners is the right to prepare derivative works from the protected materials.   Therefore, a claim that Defendants modified Plaintiff's copyrighted work without first selling the unmodified blueprint – in other words, a claim that Defendants modified Plaintiff's work without authorization – would sound in copyright infringement.[5]

In sum, the license defense does not bar claims asserting that Defendants modified a plan without first selling the plan to a customer.  Plaintiff's motion for summary judgment on the express license defenses is granted with respect to such claims.

However, the license provisions regarding reporting sales, paying fees, maintaining records, and including a copyright notice on displays of Plaintiff's work are contractual covenants, and the claimed violations of such covenants sound in breach of contract.  The license defense,

---

[5] The Court rejects Defendants' argument that the license provision regarding default and cure establishes that the terms of the license agreement are covenants.  The fact that the license agreement provides for revocation or other remedies for breach simply does not bear on the issue of which provisions in the agreement are conditions and which are covenants.

28

therefore, bars claims arising out of alleged violations of these license terms.   Defendants' motion for summary judgment on the express license defenses is granted with respect to claims arising out of breach of these contractual covenants.

For these reasons, with respect to the affirmative defense of an express written license, the Court grants in part and denies in part Plaintiff's motion and grants in part and denies in part Defendants' motion.

### b.  Implied License

The Court concludes that with respect to the affirmative defense of an implied license, Plaintiff is entitled to summary judgment.   It is established that "the existence of an implied license to use the copyright for a particular purpose precludes a finding of infringement." Johnson v. Jones, 149 F.3d 494, 500 (6th Cir. 1998).   In Jones, the Sixth Circuit concluded that an express written agreement for the use of copyrighted material – one that provides that the licensor retains ownership of the copyright and restricts the use of the copyrighted work – points away from the existence of an implied license.   Id.   The court further noted that without any indication of intent to grant an implied license, "there can be no implied license." Id. at 502.

In this case, there exists an express written license agreement between Plaintiff and Chelsea.   The license provides, "[Chelsea] acknowledges that copyright in the [] home plan designs . . . photography, Blueprints, Products and Plan Books is owned solely by [Plaintiff]." License ¶ 3.   The existence of this written license agreement providing that Plaintiff retains ownership of the copyright, coupled with the absence of an indication of intent to grant an implied license, precludes finding an implied license between the parties in this case.[6]

---

[6] Defendants' argument that the implied license defense bars the copyright infringement claims against Defendant Hagood lacks merit.   Defendants argue that Hagood had an implied license to

The Court grants Plaintiff's motion and denies Defendants' motion with respect to the implied license argument.

### D.  Waiver and Estoppel

Plaintiff argues that Defendants' affirmative defenses of waiver, estoppel, and judicial estoppel lack merit and should not survive.  Pl. Opening Br. at 10 (Dkt. 66).  Plaintiff contends that there is no evidence to support waiver, no evidence to support the elements of estoppel, and no indication of contradictory arguments that would support judicial estoppel.  Id. at 10-11. Plaintiff further argues that Defendants provide no legal basis for their assertion that Plaintiff had a legal obligation to police its copyright.  Pl. Reply at 11 (Dkt. 75).

Defendants argue that because Plaintiff had an obligation to police its copyright and did not do so, there is at least a question for the jury whether Plaintiff waived its rights.  Def. Resp. at 25 (Dkt. 72).  Defendants also contend that because Plaintiff had the obligation to police its rights and did not do so, Plaintiff failed to take advantage of an opportunity to avoid harm to Defendants, and therefore estoppel is applicable.  Id. at 26.

The Sixth Circuit has defined waiver as follows:

> Waiver is defined as the voluntary relinquishment of a known right.  A waiver must be intentional, with full knowledge of all the facts.  Although a waiver may be effected by express words or by conduct, mere silence will not amount to a waiver unless there is a duty to speak.  The party seeking to prove waiver bears the burden of showing clear and unequivocal evidence of such a purpose.

---

modify a plan if Hagood determined that the plan had been purchased from Chelsea.  While the license agreement does authorize Chelsea to modify plans that have first been purchased by customers, the license agreement prohibits modifying plans that were not first properly purchased. The prohibition against modifying plans that were not first purchased indicates that there was no intent to grant an implied license to Hagood to modify plans that were not properly purchased, regardless of whether Hagood thought that the plans had been properly purchased.  Because there is no indication of intent to grant an implied license to Hagood, the Court concludes that no such implied license was granted.

QSI-Fostoria D.C., LLC v. Gen. Elec. Capital Bus. Asset Funding Corp., 389 F. App'x 480, 487 (6th Cir. 2010) (citations omitted).

The Court concludes that Plaintiff should be granted summary judgment on the waiver defense, because Defendants have not provided support for their assertion that Plaintiff had a duty to police its copyrights and that the failure to do so constituted waiver; indeed, as the Court has discussed throughout this opinion, Plaintiff was not under a continuous duty to police and investigate its copyrights.   Nor have Defendants made the required showing of "clear and unequivocal evidence of such a purpose [to waive Plaintiff's rights]."   Absent clear, unequivocal evidence that Plaintiff intentionally waived its rights, Defendants cannot succeed on the defense of waiver.

The Court further concludes that Plaintiff is entitled to summary judgment on the equitable estoppel defense.     A copyright defendant must prove four elements to establish estoppel:

> (1) the plaintiff must know the facts of the infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury.

Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003); see also Encyclopedia Brown Prods v. Home Box Office, Inc., No. 91-4092, 1998 WL 734355, at *13 (S.D.N.Y. Oct. 15, 1998) ("In order to prevail on the defense of equitable estoppel the defendant must have been misled into reasonably and justifiably believing that the plaintiff would not pursue his claims against the defendant.").   Defendants have not pointed to evidence demonstrating that Plaintiff was aware of the infringing conduct, nor have Defendants shown that any belief by Defendants that Plaintiff would not bring copyright claims was reasonable and justified.   Therefore, Plaintiff is entitled to summary judgment on the defense of equitable estoppel.

31

Finally, Defendants did not respond to Plaintiff's arguments regarding judicial estoppel, so Plaintiff is entitled to summary judgment on this issue as well.   See, e.g., Scott v. State of Tenn., 878 F.2d 382, at *2 (Table) (6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." (citations omitted)); See also Schull v. CitiMortgage, Inc., No. 11-15643, 2012 WL 4498498, at *4 (E.D. Mich. Sept. 28, 2012) (dismissing two counts of a complaint as waived because"[a] party waives opposition to a motion if the party fails to respond to arguments raised in the motion.").

The Court grants Plaintiff's motion for summary judgment with respect to the defenses of waiver, equitable estoppel, and judicial estoppel.

### E.  Remaining Affirmative Defenses Addressed by Plaintiff

Plaintiff also seeks summary judgment on the affirmative defenses of (i) de minimus copying, (ii) works in the public domain, (iii) publication by others without a copyright notice, (iv) untimely filing with the Copyright Office, (v) nonvolitional conduct, (vi) no knowing or negligent infringement of copyrights, and (vii) copyright misuse.   Plaintiff argues that (i) Defendants have not shown that any copying was de minimus; (ii) that there is no evidence the works at issue passed into the public domain; (iii) that there is no evidence of publication without notice and that such a defense is inapplicable regardless; (iv) that the stipulation to the validity of the copyrights undercuts the defense of untimely filing with the Copyright Office; (v) that the mens rea defenses are not appropriate defenses to copyright infringement; and (vi) that there is no evidence to support the claim of copyright misuse.   Pl. Opening Br. at 11-14 (Dkt. 66).   In response, Defendants argue that these affirmative defenses should not be dismissed because discovery is still ongoing. Def. Resp. at 26-27 (Dkt. 72).

32

The Court concludes that Plaintiff is entitled to summary judgment on the remaining affirmative defenses addressed by Plaintiff.   Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations to take discovery; or
> (3) issue any other appropriate order.

Although Defendants argue that the affirmative defenses should not be dismissed because discovery is still ongoing, Defendants have not filed an affidavit identifying information "essential to justify its opposition" that may still be adduced in discovery.   "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56[d] by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate."   Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund, 349 F.3d 300, 305 (6th Cir. 2003) (citation omitted). Defendants have not filed the required Rule 56(d) affidavit, nor do Defendants respond to Plaintiff's arguments on the merits of the remaining affirmative defenses.   Furthermore, the Court has reviewed, and agrees with, Plaintiff's arguments on the merits.

Plaintiff also argues that Defendants' affirmative defenses of payment, failure to cure, and failure to terminate the license are barred.   Pl. Opening Br. at 4 (Dkt. 66).   Defendants have not responded to Plaintiff's arguments on these defenses; nor have they explained why such defenses would bar any of Plaintiff's claims.   Failure to respond is grounds for the Court to deem opposition waived.   See Scott v. State of Tenn., 878 F.2d 382, at *2 (Table) (6th Cir. July 3, 1989).   The Court therefore concludes that summary judgment should be granted to Plaintiff on the defenses of payment, failure to cure, and failure to terminate the license.

33

For these reasons, the Court concludes that Plaintiff is entitled to summary judgment on the remaining defenses it addresses.

## V.      CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for summary judgment and denies Defendants' motion for summary judgment with respect to (i) the statute of limitations defense, (ii) the laches defenses, (iii) the implied license defense, (iv) the waiver defense, (v) the estoppel defenses, and (vi) the defenses of <u>de minimus</u> copying, works in the public domain, publication by others without a copyright notice, untimely filing with the Copyright Office, nonvolitional conduct, no knowing or negligent infringement of copyrights, and copyright misuse. The Court grants in part and denies in part Plaintiff's motion, and grants in part and denies in part Defendants' motion, with regard to the affirmative defenses relating to the express license agreement as follows: (i) summary judgment is granted to Plaintiff as to the defenses of payment, failure to cure, and failure to terminate; and (ii) summary judgment is granted to Plaintiff on the express license defense as to claims based on modified works, but granted to Defendants on the same defense as to claims based on sale of unmodified works and promotion or display of any works.

SO ORDERED.


Dated:  October 8, 2013                          s/Mark A. Goldsmith                
         Flint, Michigan                         MARK A. GOLDSMITH
                                                 United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 8, 2013.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager
